# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**TAYR KILAAB AL GHASHIYAH (KHAN) et al.,**
    **Plaintiffs,**

  **v.**          **Case No. 05-C-0766**

**MATTHEW FRANK et al.,**
    **Defendants.**

## DECISION AND ORDER

 Plaintiffs Tayr Kilaab al Ghashiyah, Robert Addington, Larry Brown, Jason Krysheski, Cornell Smith, Raymond Shaw, Yusef L. Williams and Robert Joshua filed this group pro se civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of various constitutional rights. Currently before me is plaintiffs' amended complaint, which I will now screen pursuant to 28 U.S.C. § 1915A.

## I. SCREENING

 I am required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1) & (2).

 A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court

may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327.

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiffs' pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

## II. FACTS AND BACKGROUND

_____Plaintiffs are currently under the "control and custody" of the Wisconsin Department of Corrections (DOC). (Complaint [Compl.] at 2 ¶5.) Plaintiffs Ghashiyah, Addington, Brown, Smith, Shaw, Williams, and Joshua are incarcerated at Waupun Correctional Institution (WCI). Plaintiff Kryshseski is housed at Fox Lake Correctional Institution (FLCI). The complaint names 85 defendants, including Governor James Doyle, the DOC, and the

2

Wisconsin Parole Commission (WPC).  (Compl. at 1-3.)  The remaining defendants are DOC employees.  (Compl. at 1-3.)

**A.      First Amendment and Religious Practice Claims**

_____According to the complaint, defendants have intentionally deprived plaintiffs of the "legal tools" necessary to litigate "judicial relief."  (Compl. at 5 ¶23.)  First, defendants Frank and Doe discriminated against plaintiffs because they provided "free filing fees to all out-of-state incarcerated persons," yet they "enforced a stricter compliance" on incarcerated persons confined in Wisconsin prisons. (Compl. at 5 ¶26.)  Second, between 1999 and 2005, defendants Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Knoll, Kingston, Gourlie, Janssen, Smith, Core, Melcher, Muraski, Thomas, Alsum-O'Donovan, Opperman, Brouckhaus, Setlling, O'Donovan, Rainke, Noe, Nahmens, Mittelstealdt, Bushwieler, and Doe delayed, hindered, and interfered with plaintiffs' access to legal mail, legal photocopies, legal assistance, and the law library.  (Compl. at 6 ¶30.)  And, from 2004 to 2005, defendants intentionally interfered with plaintiffs' attempts to mail each other legal materials.  (Compl. at 7 ¶41.) Finally, plaintiffs allege that defendants invented false reasons for failing to accept inmate grievance complaints, and prohibited them from filing group complaints, thereby interfering with their ability to exhaust the prison grievance procedures. (Compl. at 9 ¶ 61.)

Second, between 2003 and 2005, defendants DOC, Frank, McCaughtry, Bertrand, Baenen, Clement, Thurman, Erickson, Kroll, Gourlie, Janssen, Core, Schueler, Ronzani, O'Donovan and Doe prohibited the use of "obscene, profane and abusive" language in inmate complaints.  (Compl. at 9 ¶53.) When plaintiffs filed a complaint challenging the

3

constitutionality of Wis. Admin. Code DOC § 310.09(1)(c) and defendants' definition of "obscene," defendants threatened plaintiffs and placed "a warning on their inmate warning cards." (Compl. at 9 ¶57.)

Third, defendants refused to deliver "books, magazine (sic), political publications" and religious literature to inmates in the "adjustment segregation unit." (Compl. at 8 ¶49.) Moreover, when plaintiffs' "books, magazines, political publications and religious literatures arrives (sic) in the mail," defendants Frank, Kingston, Clement, Thurman, Schueler, Janssen, Bertrand, Baenen, Erickson, Stelling, Muraski, Hoeltel, Core and Jane Doe do not provide inmates in segregation with a notice of non-delivery of mail. (Compl. at 8 ¶50.)

Fourth, on March 28, 2000, defendants Frank, McCaughtry, Bertrand, Baenen, Thurman, Clement, Kingston, Core, Muraski, Schueler, Janssen, Thomas and Jane Doe accepted a new "dual name" policy allowing plaintiff Ghashiyah to use the names "Tayr Kilaab/Casteel and his number" to identify himself on prison forms and mail. (Compl. at 11 ¶73.) However, between January 7, 2004 and June 15, 2005, defendants Witthun, K. Erickson, J. Noe, Brockhaus, Opperman, Nahmen, Mittelstealdt, Nault, Schrubble, LaPaine, and Jane Doe "refused to process" plaintiff Ghashiyah's "mail, medical forms and other documents" because plaintiff used both of his names. (Compl. at 11 ¶74.)

Fifth, on January 6, 1985, plaintiff Ghashiyah's religious preference was listed as "Islam" on prison forms. (Compl. at 12 ¶78.) However, from 2002 to 2005, defendants DOC, Frank, McCaughtry, Clement, Thurman, Bertand, Baenen, Erickson, Donovan, Kingston, Witch, Janssen, Core, Schueler, Muraski, Tetzlaff, Thomas, O'Donovan, Stelling and Jane Doe "restricted" Ghashiyah's "religious request for Ramdham, religious ministration and sacrament." (Compl. at 12 ¶79.) Also during that time, defendant Witch "revealed

4

religious communication between a spiritual advisor and plaintiff [Ghashiyah] without his consent contrary to state laws." (Compl. at 12 ¶82.)

Sixth, defendants Frank, McCaughtry, Kingston, Clement, Thurman, Witch, Schueler, Janssen, Core, O'Donovan, Muraski, Tetzlaff, Thomas and Jane Doe "maintain a custom and practice that incarcerated persons confined in segregation" may not possess religious texts besides a "Bible, Quran, or Equivalent major text." (Compl. at 12 ¶84.) In particular, during May and June, 2004, defendants denied plaintiff Brown access to a copy of "Science of the Mind." (Compl. at 12 ¶¶84-85.) When defendants Schueler and Witch discussed whether Brown should be allowed to possess "Science of the Mind," Witch revealed "confidential information" about Brown contrary to Wis. Admin. Code DOC § 905.06. (Compl. at 12 ¶¶86-87).

Finally, from 2001 to 2005, defendants DOC, Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Kingston, Schrubble, Westphal, Jenning, Vander Kinter, Klarkowski, Schaefer, LaPine, and Peter Roe forced plaintiffs to be injected with Aplisol, a "tuberculin purified protein derivative." (Compl. at 10 ¶65.) Defendants threatened inmates with force and segregation if they did "not comply with [the] injection." (Compl. at 10 ¶¶68-69). Moreover, plaintiffs contend that Jewish and Muslim inmates were involuntarily injected with Aplisol in violation of their religious beliefs. (Compl. at 11 ¶72.) In support of their contention, plaintiffs have "direct proof" that Aplisol is "deprived (sic) from hogs and contains 100% pork-by products." (Compl. at 10 ¶67.)

5

## B. Due Process and Retaliation Claims

Plaintiffs first contend that defendants' failure to adhere to "DOC regulations or constitutional standards" when issuing conduct reports has had a significant impact on plaintiffs' status. (Compl. at 14 ¶99; 29 ¶233-234.) Specifically, Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Kingston, Schwochort, Oestrict, Core, Nelson, Hoff, Schueler, Muraski, Stelling, O'Donovan, Schuab and Peter Roe do not provide inmates with enough advance "notice of the date and time" of their hearings to allow them to prepare their cases and collect evidence. (Compl. at 14 ¶101.) Furthermore, plaintiffs are not allowed access to physical evidence, and defendants "intentionally failed to provide incarcerated persons, include (sic) plaintiffs, with adequate assistance of a lay-advocate." (Compl. at 15 ¶¶104-05.) Finally, defendants Frank, McCaughtry, Clement, Thurman, Core, Muraski, O'Donovan, Thomas, Tetzlaff, Polinske, Aldrich and Jane Doe discriminatorily imposed "institutional adjustment" status without a formal notice, and hearing. (Compl. ¶ 232.) Plaintiffs contend that defendants impose institutional adjustment based solely on their past history, and without regard to any current rule violations. (Id.)

Second, plaintiff Ghashiyah asserts that defendants Frank, McCaughtry, Kingston, Clement, Thurman, O'Donovan, Core, Russell, Tollefson, Gerritson, Smith, Nelson, Stelling, Bertrand, Baenen, Erickson, Schwochort, Janssen, Schueler, Witch, Opperman, Brockhaus, Hoff, Schrubble, Lind, Brown, Passig, Muraski, Tetzlaff, Thomas, Rainke, Roelke, Beasely, Fuecht and Jane Doe placed him and other incarcerated persons on a restrictive diet of "seg-loaf" for several successive days as punishment for rule infractions without providing him with a hearing, or pre-deprivation procedures. (Compl. ¶¶ 108-110.)

6

Third, plaintiffs assert that defendants Frank, McCaughtry, Clement, Thurman, Betrand, Baenen, Erickson, Kroll, Kingston, Witch, Schrubble, Janssen, Oestrich, Core, Schueler, Aldrich, Polnske, Wells, Chackbarth, Melcher, Muraski, Tezlaff, Hansen, Thomas, O'Donovan, Stelling, Parole Commission and Jane Doe intentionally maintained incorrect and false information inside plaintiffs' prison files. (Compl. ¶ 232 -234).  Plaintiffs further contend that, although they requested that such false information be expunged from their files, defendants refused and used the information to restrict plaintiffs' good-time credits, work-release status, and participation in various other programs, which had an effect on parole considerations. (Id.)

Fourth, plaintiff challenges "the constitutionality of procedures utilized and used in disciplinary proceedings that denies good-time credits, rather that (sic) result of proceedings." (Compl. at 13 ¶ 94.)  In support of this contention, plaintiffs list myriad conduct reports, in which they assert defendants Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Kingston, Schwochort, Witch, Smith, Fix, Oestrict, Core, Nelson, Hoff, Schueler, Muraski, Boushka, Stelling, O'Donovan, Russell, Tollefson, Gerritson, Gaybay, Levey, Schuab, Gill and Jane Doe arbitrarily failed to adhere to constitutional standards, and which impacted plaintiffs' status.

Finally, plaintiffs assert that defendants Kroll, Ronzani, and O'Donovan retaliated against plaintiffs for challenging defendants' rule banning obscene language.  (Compl. ¶¶ 56-60.)

7

### C.    Eighth Amendment Claims

_____Plaintiffs first assert that during the "cold winter season months," defendants Frank, Bertrand, Baenen, Erickson, Stelling and Jane Doe provide inmates with "only a single blanket," and inadequate outerwear (Compl. at 19 ¶141.)

Second, plaintiffs allege that the food that they are provided on a daily basis does not meet minimum requirements for daily nutritional allowance.  (Compl. at 16 ¶111.)  Further, they allege that guards steal food from trays, which also serves to reduce the nutritional value of their meals. (Id.)

Third, plaintiffs were intentionally housed in cells next to psychiatric patients who screamed and beat on metal toilets, and plaintiffs were placed in cells which psychiatric patients had used that were smeared with feces.  (Compl. at 25 ¶¶204-205.) Further, they were not provided with adequate cleaning supplies. (Compl. at 19 ¶ 144).  Plaintiffs  contend that such placement deprived them of cleanliness, sleep and peace of mind. (Id.)

Fourth,  defendants prohibit inmates in segregation from possessing hygiene items such as a razor, soap and toothbrush.  (Compl. at 19 ¶142.)

Fifth, plaintiff Ghashiyah alleges that defendants O'Donovan, Longseth, Gaybay, Levey and Jane Doe harassed him regarding his special  ID card, which he uses because he is allergic to the ID card provided to other inmates. (Compl. at 22 ¶¶ 169.) In addition, defendants harassed him regarding his medically prescribed gloves.  (Id. at 22 ¶ 172.)

Sixth, from 1981 to 2005, defendants Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Kingston, Schrubble, Westphal, Jenning, Jannsen, Smith, Oestrich, Longseth, Core, Nelson, Schaefer, Schueler, Muraski, Tetzlaff, Thomas,

8

O'Donovan, LaPine, DOC and Jane Doe exposed inmates in their "cell halls and other location (sic)" to second hand environmental tobacco smoke (ETS). (Compl. at 23 ¶176.) Specifically, defendants forced plaintiffs to be housed with "smoker[s]," and failed to take reasonable steps to alleviate the smoky conditions. (Compl. at 23 ¶177.) Furthermore, plaintiffs Ghashiyah and Shaw suffer from asthma that becomes "serious" upon exposure to ETS. (Compl. at 23 ¶179.)

Finally, defendants Frank, McCaughtry, Bertrand, Baenen, Clement, Thurman, Core, Muraski, Thomas, Schueler, Erickson, Kingston, Janssen, Smith, Oestrich, Longseth, Nelson, Tetzlaff, O'Donovan and Peter Roe removed violent incarcerated persons from "RED TAGS," a security restriction which prohibits these violent inmates from being double-celled with non-violent inmates. (Compl. at 24 ¶191.) Further, defendants routinely and generally double cell incarcerated persons suffering with a contagious diseases such has hepatitis, aids, chicken pox and tuberculosis with non-inflicted individuals. (Compl. at 24 ¶ 189.)

**D.      ADA and Equal Protection Claims**

_____In February 2005, defendants DOC, Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Kingston, Schrubble, Westphal, Jenning, Vanter Kinter, Klarkowski, Janssen, Smith, Oestrich, Nelson, Schaefer, Schueler, Aldrich, Hansen, Melcher, Polinske, and Jane Doe failed to provide alcohol and drug abuse treatment programs at each state prison facility. (Compl.at 24 ¶187.) In particular, the state prisons have "a five to eight years waiting list" for alcohol and drug treatment programs. (Compl. at 24 ¶188.) As a result, plaintiffs have been denied transfers and the opportunity to

9

"participate in vocational training, work-release programs, treatment programs, job assignment and parole status" because of plaintiffs' alcohol and drug addictions and mental impairment. (Compl. at 30 ¶242.) Moreover, between 1994 and 2005, defendants followed "an unwritten policy if automatically denying vocational training, work-release or parole to incarcerated persons...with substance abuse histories and mental impairment in violation of Title II of the ADA." (Compl. at 30 ¶245, 246.)

Next, plaintiffs allege that defendants Frank, McCaughtry, Kingston, Clement, Thurman, O'Donovan, Core, Schueler, Witch, Bertrand, Baenen, Erickson, Smith, Nelson, Schwochort, Schaub, Jannsen, Stelling and Jane Doe enforce a policy "known as the No Step program," which prohibits prisoners who have been found guilty of disciplinary misconduct from obtaining prison employment for "90 to 265 days after release from segregation units." (Compl. at 16 ¶113.)

Finally, between 1994 and 2005, defendants DOC, WPC, Frank, Kingston, McCaughtry, Smith, Clement, Thurman, Baenen, Erickson, Hansen, Aldrich, Polinske, Well, Hackbarth, Muraski, Melcher, Nelson, and Jane Doe have permitted prisoners who have been transferred out of state to participate in litigation without paying filing fees, while defendants have imposed court fees upon plaintiffs. (Compl. at 28 ¶225.) Also, defendants have given out of state prisoners priority for work assignments, treatment programs, and parole status. (Compl. at 28 ¶225.) In particular, out-of-state prisoners are hired immediately upon their return to Wisconsin prisons, while plaintiff Smith waited over three years to obtain a work assignment. (Compl. at 28 ¶229.)

**E. Other Miscellaneous Claims and Relief Requested**

10

Plaintiffs contend that defendants have "failed to implement training programs for its jailors and staff." (Compl. at 31 ¶255.) As a result, defendants' hiring practice rises to the level of "deliberate indifference"and "gross neglect." (Compl. at 31 ¶257.)

Finally, plaintiffs assert that the DOC's disciplinary statute, Wis. Admin. Code § DOC 303, is an unconstitutional bill of pain and penalties in violation of Article I section 10 of the Constitution.

Plaintiffs request the following as relief: 1) a declaratory judgment that the practices and acts complained of herein are illegal and unconstitutional; 2) a permanent injunction barring defendants from continuing the practices complained of herein; 3) a permanent injunction preventing defendants from transferring plaintiffs to another institution during the pendency of this litigation without plaintiffs' consent; 4) compensatory damages of $250,000; 5) punitive damages of $588,000; 6) a jury trial; and 7) attorneys' fees and costs.

### III.  DISCUSSION

**A.      First Amendment and Religious Practice Claims**

**1.      Access to the Courts**

It is well established that prisoners have a constitutional right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821 (1977).  This right "requires prison authorities to assist inmates in preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  Id. at 828.

To establish a denial of his constitutional right an inmate must show that the prison had deficient legal facilities and that he was hindered in his efforts to pursue a particular legal claim.  See Lewis v. Casey, 518 U.S. 343, 351 (1996); see also Alston v. Debruyn, 13

11

F.3d 1036, 1040-41 (7th Cir. 1994) (holding that inmate must establish (1) the failure of prison officials to assist in the preparation and filing of meaningful legal papers and (2) some quantum of detriment caused by the challenged conduct). Even if the inmate can establish an "absolute deprivation of access to all legal materials," his claim will fail absent identification of some injury linked to the deprivation. Lewis, 518 U.S. at 353 n.4.

Here, plaintiffs allege that defendants delayed, hindered and interfered with plaintiffs' access to legal mail, legal photocopies, legal assistance, and the law library. In addition, although it is unclear specifically what deprivation was suffered, plaintiffs allege that they were hindered from filing numerous actions between 1994-2005. Finally, plaintiffs assert that defendants interfered with their completion of grievance procedures, denying their ability to exhaust at least some claims. Given these allegations, it is not clear that plaintiffs could prove no set of facts in support of their claims. Thus, plaintiffs sufficiently have alleged an access to the courts claim.

### 2. Free Speech

Plaintiffs assert that defendants' prohibition of obscene language is unconstitutional. Inmates' First Amendment rights are limited to the extent they are consistent with prison discipline, Ustrak v. Fairman, 781 F.2d 573, 580 (7th Cir. 1986); see also Hale v. Scott, 371 F.3d 917 (7th Cir. 2004), and the Supreme Court has recognized that the "freedom of speech" referred to by the First Amendment does not protect speech that is obscene, Roth v. United States, 354 U.S. 476, 488-89 (1957). However, in the present case, plaintiffs have challenged defendants' definition of obscene. Further, at this stage of the litigation, I cannot

Case 2:05-cv-00766-LA    Filed 05/11/06    Page 12 of 32    Document 42

determine whether such prohibition is reasonably related to prison discipline and security. Therefore, plaintiff's may proceed on this claim.

Next, plaintiffs contend that defendants deny them books, magazines and political and religious reading materials while they are in segregation. Inmates have a First Amendment right to receive magazines and newspapers through the mail, <u>Sizemore v. Williford</u>, 829 F.2d 608, 610 (7th Cir. 1987), although this right may be limited in furtherance of legitimate penological objectives, <u>Brookins v. Kolb</u>, 990 F.2d 308, 313 (7th Cir. 1993). Plaintiffs' segregation status is not, in and of itself, sufficient to justify a blanket prohibition on segregation inmates' right of access to newspapers, magazines and photographs. <u>See Banks v. Beard</u>, 399 F.3d 134, 148 (3rd Cir. 2005). Thus, plaintiffs may proceed with this claim.

### 3. RLUIPA and Free Exercise Claims

Plaintiffs aver that defendants violated their rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Free Exercise Clause of the First Amendment.[1] "RLUIPA forbids (so far as bears on this case) prisons that receive federal funding from burdening a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest." <u>Lindell v. McCallum</u>, 352 F.3d 1107, 1109-10 (7th Cir. 2003). The Wisconsin prison system receives federal funding. <u>Id</u>. at 1110 (citing <u>Charles v. Verhagen</u>, 348 F.3d 601, 606 (7th Cir. 2003)). Thus, "to state a claim under RLUIPA a Wisconsin prisoner need

---

[1]In addition, plaintiffs allege that defendants violated their rights under the Religious Freedom Restoration Act (RFRA) of 1993, 42 U.S.C. § 2000bb to 2000bb-4. However, in <u>City of Boerne v. Flores</u>, 521 U.S. 507 (1997), the Supreme Court struck down RFRA as it applied to states and localities.

13

allege only that the prison has substantially burdened a religious belief[.]" <u>Lindell</u>, 352 F.3d at 1110.

The Free Exercise Clause of the First Amendment also protects an inmate's right to exercise his religious beliefs in prison. <u>Tarpley v. Allen County</u>, 312 F.3d 895, 898 (7th Cir. 2002). When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. <u>Alston v. DeBruyn</u>, 13 F.3d 1036, 1039 (7th Cir. 1994).

Plaintiffs' RLUIPA and First Amendment claims may be summarized as follows. First, plaintiff Ghashiyah asserts that his prison forms were diverted because prison officials refused to recognize his religious name. Second, plaintiff Ghashiyah claims that he was prevented from participating in Ramadan. Third, plaintiffs contend that they are prohibited from possessing religious materials other than the Bible, Quran, or equivalent major text while in segregation, and are denied access to other religious materials. Particularly, plaintiff Brown contends that he was denied access to "Science of the Mind." Finally, plaintiffs allege that Jewish and Muslim inmates were involuntarily injected with a pork by-product. This is sufficient to state a claim under RLUIPA and the Free Exercise Clause

Plaintiffs also allege that defendant Witch violated Wisconsin state law when she revealed confidential information about plaintiffs Ghashiyah and Brown. However, a violation of state law, by itself, will not support a constitutional violation. <u>Hartland Sportsman's Club, Inc. v. Town of Delafield,</u> 35 F.3d 1198, 1202 (7th Cir. 1994). Therefore, I will dismiss this claim.

**B.     Due Process and Retaliation Claims**

### 1.    Unwanted Medical Treatment

Plaintiffs contend that defendants involuntarily injected them with a pork-by product, in violation of their due process rights.[2]  The Supreme Court has held that a competent person has a liberty interest in refusing unwanted medical treatment, including the forcible injection of medication.  Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 278 (1990) (citing Washington v. Harper, 494 U.S. 210, 229 (1990)).  Accordingly, plaintiffs' allegation that defendants' injected them with a pork by-product is sufficient to state a due process claim against defendants DOC, Frank, McCaughtry, Clement, Thurman, Bertrand, Baenen, Erickson, Kingston, Schrubble, Westphal, Jenning, Vander Kinter, Klarkowski, Schaefer, LaPine and Peter Roe.

### 2.    Disciplinary Hearings

Next, plaintiffs contend that defendants violated their due process rights with respect to their disciplinary hearings in the following ways.  First, defendants did not provide plaintiffs with enough time to prepare.  Second, defendants did not provide plaintiffs with a list of physical evidence used at the hearing.  Third, defendants failed to provide plaintiffs with the assistance of a lay advocate.  Finally, plaintiffs challenge defendants practice of placing them in "adjustment segregation" without a hearing.

While the Supreme Court has indicated that, in general, prisoners do not have a protected liberty interest in their segregation status, Sandin v. Connor, 515 U.S. 472, 486 (1995), the Court also noted that a protected interest may exist if segregation serves to increase the length of a prisoners sentence, id. at 487.   Pursuant to Wis. Admin. Code §

---

[2]Although plaintiffs raised this issue in connection with their religious practice claim, they also seem to raise it in connection with their due process claim.

15

DOC 303, a Wisconsin prisoner's mandatory release date – in which there is a protected liberty interest, see Felce v. Fiedler, 974 F.2d 1484, 1491-92 (7th Cir. 1992) – is increased by up to 50% of the time served in an adjustment program or controlled segregation status. Wis. Admin. Code § DOC 303.84(g) ("For those inmates to whom 1983 Wis. Act 528 applies, in addition to other penalties imposed in accordance with this subsection, the inmate's mandatory release date shall be extended by the number of days equal to 50% of the number of days spent in adjustment, program or controlled segregation status."). Thus, plaintiffs may proceed on their due process claim to the extent they were deprived of a protected interest in mandatory release.

       3.      **"Nutri-Loaf"**

      Plaintiffs contend that defendants' failed to provide them with a hearing before placing them on a restrictive diet consisting of a meatloaf-like substance known as "nutri-loaf," in violation of the Fourteenth Amendment. Due process is required only when the deprivation imposes an "atypical and significant hardship in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 478. Plaintiffs' claim does not rise to this level because temporarily subjecting plaintiffs to such meals does not constitute an "atypical hardship" within the meaning of Sandin. See, e.g., Blount v. Johnson, No. 7:05CV00556, 2006 U.S. Dist. LEXIS 17300, at *10 (W.D. Va. Feb. 14, 2006) (holding that the plaintiff's temporary placement on a loaf meal did not constitute an atypical and significant hardship under Sandin, and citing cases). Thus, plaintiffs' due process claims with respect to restrictive diets will be dismissed.

       4.      **False Information**

16

Plaintiffs next allege that defendant's violated their Fourteenth Amendment Due Process rights when they intentionally maintained incorrect and false information inside plaintiffs' prison files, which were then used to restrict plaintiffs' good-time credits, work-release status, and participation in various other programs, which had an effect on parole considerations. (Compl. ¶ 232). Wisconsin prisoners have a liberty interest in mandatory release and good-time credits. See Felce, 974 F.2d at 1491. Further, "[i]n certain limited circumstances a claim of constitutional magnitude is raised where a prisoner alleges (1) that information is in his file, (2) that the information is false, and (3) that it is relied on to a constitutionally significant degree." Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979); see also Pruett v. Levi, 622 F.2d 256, 258 (6th Cir.1980) (applying Paine); LaBounty v. Coombe, No. 95 CIV. 5592, 1999 WL 177438, at *2 (S.D.N.Y. 1999) (applying Paine and Pruett).

Here, plaintiffs allege that the information in their files is false, that plaintiffs requested that defendants expunge the false information from their record, and that defendants ignored plaintiffs' request and knowingly used the false information to make decisions regarding segregation, work-release, good-time credits and parole. Thus, on the basis of the limited allegations before me, I conclude that plaintiffs have stated at least a cognizable claim and will be permitted to proceed.

### 5. DOC Disciplinary Procedures

Plaintiffs also challenge defendants' application of the Wisconsin DOC's disciplinary proceedings as arbitrary government actions under substantive due process. The due process clause "contains a substantive component, sometimes referred to as 'substantive due process,' which bars certain arbitrary government actions 'regardless of the fairness of

17

the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 337 (1986) (Stevens, J., concurring). The substantive due process guarantee "serves to prevent governmental power from being used for purposes of oppression." Id. at 331. Although the scope of substantive due process has been questioned in the prison context, "official conduct involv[ing] the willfully illegal exercise of discretion . . . may implicate substantive due process because it affects the individual's right to be free of the abuse of power." Leslie v. Doyle, 125 F.3d 1132, 1136 (7th Cir. 1997). Thus, because the scope of this right is not entirely clear, and it is not apparent that plaintiffs could prove no set of facts in support of their claims, I will allow plaintiffs to proceed on this claim.

6. **Retaliation**

A plaintiff must plead three elements in order to state a claim for retaliation: (1) he must "specif[y] a retaliatory action;" (2) he must name the appropriate defendants; and (3) he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." Hoskins v. Lenear, 395 F.3d 372, 275 (7th Cir. 2005). Plaintiffs assert that defendants Kroll, Ronzani, and O'Donovan retaliated against plaintiffs for challenging defendants' rule banning obscene language. Plaintiffs' allegations are sufficient to state a retaliation claim: they identified the threats and warning marks as the retaliatory conduct; they specified the relevant defendants; and they invoked their constitutional right to free speech. Accordingly, plaintiffs may proceed on their retaliation claim against defendants Kroll, Ronzani and O'Donovan.

C. **Eighth Amendment Claims**

18

The Eighth Amendment proscribes conditions of confinement that amount to cruel and unusual punishment. In order to establish such a claim, the plaintiff must demonstrate: (1) a "sufficiently serious" deprivation and (2) that prison officials acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Mechanical rules are not to be employed in determining whether an alleged deprivation violates the Eighth Amendment. Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981). However, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." Wilson, 501 U.S. at 298 (quoting Rhodes, 452 U.S. at 347). Prison conditions cannot rise to the level of cruel and unusual punishment unless they produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise. – for example, a low cell temperature combined with a failure to issue blankets." Wilson, 501 U.S. at 304.

**1. Cold Cell Conditions**

Plaintiffs allege that they were provided with inadequate clothing and only one blanket during the cold winter months, and that their cell temperatures were extremely cold. Prisoners have an Eighth Amendment right to adequate shelter, including a right to protection from cold. See Dixon v. Godinez, 114 F.3d 640, 642 (7th Cir.1997); Del Raine v. Williford, 32 F.3d 1024, 1034 (7th Cir. 1994). Accordingly, plaintiffs' allegations outlined above are sufficient to state an Eighth Amendment conditions of confinement claim.

**2. Nutritional Diet**

Plaintiffs also challenge the nutritional value of the food they receive in prison. With regard to prison food, all that the Eighth Amendment requires is that prisoners receive

19

adequate nutrition to maintain normal health; the food need not be tasty or aesthetically pleasing. See Cunningham v. Jones, 567 F.2d 653, 659-60 (6th Cir.1977). Here, plaintiffs assert that defendants "intentionally and deliberately reduced the quality and nutritious value of food and meals provide (sic) to incarcerated persons in the past eight (8) years." Moreover, they allege that guards remove food from their trays, further reducing the nutritional value of their meals. Thus, to the extent that plaintiffs challenge the nutritional adequacy of the food they receive in prison, they may proceed with their claims.

Plaintiff Ghashiyah also asserts that defendants have failed to comply with his medically prescribed diet. Deliberate indifference to a prisoner's medically proscribed diet may constitute an Eighth Amendment violation. Byrd v. Wilson, 701 F.2d 592, 594-95 (6th Cir.1983) (stating that prison officials' deliberate indifference towards inmate's special diet can form basis for Eighth Amendment claim if diet is medically necessary). Thus, he may proceed with his medical diet claim.

### 3. Housing Near Psychiatric Patients

Plaintiffs contend that they were intentionally housed in cells next to psychiatric patients who screamed and beat on metal toilets, which deprived them of sleep and peace of mind. Prisoners have an Eighth Amendment right to be "housed in an environment that, if not quiet, is at least reasonably free of excess noise." Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996). Thus, plaintiffs will be permitted to proceed with this claim. Plaintiffs also assert that they were placed in cells that psychiatric patients had used, which were smeared with feces. In Johnson v. Pelker, 891 F.2d 136 (7th Cir.1989), the court held that a prisoner stated a claim under the Eighth Amendment when he alleged that he had been kept for three

20

days in a cell with feces smeared on the walls and with no running water. Here, plaintiffs contend that, when subject to this environment, they were deprived of a clean environment. Further, they allege that they are not provided with adequate cleaning supplies. Although it is unclear how long plaintiffs were kept in unclean cells, I conclude that plaintiffs have stated at least cognizable claims.

### 4. Hygiene Products in Segregation

Plaintiffs assert that they were denied access to a razor, soap and toothbrush in segregation. The Supreme Court has held that inmates are entitled to hygiene items such as tooth-paste. Rhodes, 452 U.S. at 355; Schmitt v. Crist, 333 F. Supp. 820, 822 (E.D. Wis. 1971). Accordingly, plaintiffs have alleged facts sufficient to state an Eighth Amendment hygiene claim.

### 5. Ghashiyah's ID Card and Gloves

Plaintiff Ghashiyah alleges that defendants harassed him regarding his medically approved prisoner ID card and medically prescribed gloves. However, disrespectful and abusive comments by prison guards alone are insufficient to implicate the Eighth Amendment. Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir.1996), amended,135 F.3d 1318 (9th Cir.1998). Thus, plaintiffs may not proceed on this claim.

### 6. Environmental Tobacco Smoke

Plaintiffs allege that they have been exposed to ETS. In Helling v. McKinney, 509 U.S. 25, 35 (1993), the Supreme Court held that such exposure may be sufficient to establish an Eighth Amendment claim. Therefore, plaintiffs may proceed on an ETS claim.

21

### 7.    Failure to Protect

Finally, plaintiffs challenge defendants' cell classification system.   The Eighth Amendment's Cruel and Unusual Punishment Clause imposes upon prison officials the duty to "'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  This duty requires prison officials "to protect prisoners from violence at the hands of other prisoners."  Id. at 833 (internal quotations omitted).  Further, the Eighth Amendment also prohibits the mingling of inmates with serious communicable diseases.  See Hutto v. Finney, 437 U.S. 678, 682 (1978).  To state a failure to protect claim, a plaintiff-inmate must allege that (1) "he is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with "deliberate indifference" to that risk.  Id. at 834.  Plaintiffs need not assert that such harm has occurred or will occur immediately. Helling, 509 U.S. at 33 (rejecting prison's argument that plaintiff did not state ETS claim because there was no proof that he was currently suffering serious medical problems caused by exposure to ETS).

Here, plaintiffs assert that defendants' cell classification system is inadequate because they routinely double cell prisoners suffering contagious diseases with non-inflicted individuals.  Further, plaintiffs assert that defendants routinely placed incarcerated persons in double cells with persons prone to violence and sexually assaultive behavior. Thus, I conclude that plaintiffs have sufficiently alleged an Eighth Amendment claim based on their challenges to defendants' cell classification system.

22

**D.      ADA and Equal Protection Claims**

Plaintiffs aver that defendants discriminated against them in various ways.  To comply with equal protection, governmental entities are generally required to treat all similarly situated persons in a similar manner.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  Where the circumstances do not involve a suspect classification such as race or gender, an inmate who challenges a particular prison practice or regulation must show or indicate that the regulation is not reasonably related to a legitimate governmental concern, or must demonstrate that the challenged regulation or practice is an exaggerated response to those concerns.  See Caldwell v. Miller, 790 F.2d 589, 609 (7th Cir. 1986).

A prison regulation that treats inmates unequally will be upheld if it is reasonable in light of legitimate penological interests.  May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000).  While prison officials are to be accorded deference with respect to the administration of prison affairs and a mere inconsistency in the treatment of some prisoners is not sufficient to state an equal protection claim, when a plaintiff asserts that defendants discriminated him as a member of a group in favor of others similarly situated the state must come forward with a legitimate government interest.  Durso v. Rowe, 579 F.2d 1365, 1379 (7th Cir. 1978).  Upon such a showing, the plaintiff then has the burden of demonstrating that the regulation at issue is not rationally related to any of the legitimate interests presented by the state.  Id.

Title II of the Americans with Disabilities Act of 1999 (ADA), 104 Stat. 337, 42 U.S.C. § 12131 et seq., provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

23

42 U.S.C. § 12132.  Title II applies to state prison inmates.  <u>Penn. Dep't of Corr. v. Yeskey</u>, 524 U.S. 206, 213 (1998).

### 1.    Alcohol and Drug Treatment

Plaintiffs contend that defendants violated the Equal Protection Clause and the ADA when they discriminated against plaintiffs on the basis of mental impairment and past alcohol and drug use.  By alleging that defendants fail to provide treatment and deny programming and benefits to those allegedly suffering from substance abuse histories or mental impairments, plaintiffs have sufficiently alleged a claim under the ADA and the Equal Protection Clause.

### 2.    "No Step" Program

Plaintiffs allege that defendants enforce a policy that restricts employment for inmates in, or recently released from, disciplinary segregation.  There is no constitutional right to prison employment, <u>see</u> <u>Wallace v. Robinson</u>, 940 F.2d 243, 245 (7th Cir. 1991), and no violation of equal protection in withdrawing such privileges from those found guilty of disciplinary violations and placed in segregation, <u>see</u> <u>Martinez v. Gunter</u>, No. 94-1493, 1995 U.S. App. LEXIS 15312 (10th Cir. June 20, 1995); <u>Allgood v. Morris</u>, 724 F.2d 1098, 1100-01 (4th Cir. 1984); <u>Dorrough v. Hogan</u>, 563 F.2d 1259, 1262-63 (5th Cir. 1977); <u>Little v. Terhune</u>, 200 F. Supp. 2d 445, 452-53 (D.N.J. 2002).   Similarly, loss of such privilege is insufficient to state a due process claim.  <u>See</u> <u>Thomas v. Ramos</u>, 130 F.3d 754, 760-62 (7th Cir. 1998).  Therefore, plaintiffs may not proceed on this claim.

24

### 3. Favoritism to Out-of-State Inmates

Plaintiffs assert that defendants violated their equal protection rights by providing free filing fees and better jobs to out-of-state prisoners. Prison officials cannot without a reasonable basis prefer one group of inmates over another, Mays, 226 F.3d at 882, and at this point it is unclear whether defendants' alleged favoritism is related to a legitimate penal interest. Accordingly, plaintiffs may proceed on these equal protection claims.

### E. Miscellaneous Claims

### 1. Training

Plaintiffs allege that defendants were deliberately indifferent in their training and hiring practices, allowing the violations complained of to occur. Plaintiffs face "a substantial challenge because failure to train claims are usually maintained against municipalities, not against individuals." Sanville v. McCaughtry, 266 F.3d 724, 739-40 (7th Cir. 2001) (citing Williams v. Heavener, 217 F.3d 529, 532 (7th Cir. 2000); Kitzman-Kelley v. Warner, 203 F.3d 454, 459 (7th Cir. 2000)). Further, because the doctrine of respondeat superior does not apply in § 1983 actions, when a prisoner seeks to hold a supervisor liable he must demonstrate "deliberate, reckless indifference" to the misconduct of subordinates. Id.; see also Chavez v. Ill. State Police, 251 F.3d 612, 651 (7th Cir. 2001) ("The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.").

In the present case, plaintiffs make only vague allegations that the defendants' faulty training and hiring practices led to the violations of their rights. They fail to make any

allegation that any specific defendant turned a blind eye to the particular conduct mentioned in the complaint.  Therefore, plaintiffs may not proceed on this claim.

### 2.    Constitutionality of DOC 303

Plaintiffs assert that Wis. Stat. DOC 303 is penal in nature, violates the prohibition against a Bill of Pain and Penalties, violates the due process clause of the Fourteenth Amendment, is an ex post facto law, and is against public policy contrary to Article I § 10 of the United States Constitution.  I will address first plaintiffs' averment that DOC 303 is an unconstitutional bill of pain and penalties.  "Strictly speaking, an act is a bill of attainder when the punishment is death, and a bill of pains and penalties when the punishment is less severe, but both kinds of punishment have been held to fall within the scope of the constitutional prohibition."  Nixon v. Adm'r of Gen. Srvs., 408 F. Supp. 321, 371 (D.D.C. 1976) (Nixon I).   States are prohibited from passing bills of pain and penalties or bills of attainder under Article 1, section 10 of the United States Constitution.   A law is a prohibited bill of pain and penalties when it provides for a "determination of guilt and imposition of punishment upon a specified group or specified individuals without the safeguards of a judicial trial." Nixon I, 408 F. Supp. at 371.  Further, "[o]ne who complains of being attainted must establish that the legislature's action constituted punishment and not merely the legitimate regulation of conduct." Nixon v. Adm'r of Gen. Srvs. (Nixon II), 433 U.S. 425, (1977).

Even assuming that such prohibition extends to administrative regulations, plaintiffs' claim must fail.  Here, it is clear that, pursuant to DOC 303, inmates must be granted a hearing, unless they consent to a summary disposition procedure prior to punishment. Wis.

26

Admin. Code §§ DOC 303.74-75. If the inmate consents to a summary disposition procedure, a prison staff member may find that the inmate is guilty of a minor rule violation without a hearing and punish the inmate according to the rules. Id. § DOC 303.74. If the inmate is guilty of a more significant violation, or does not agree to summary disposition, he is provided with a hearing under DOC 303.75. Further, DOC 303 merely regulates conduct, and does not itself impose punishment. Thus, for the reasons stated, DOC 303 is not an unconstitutional bill of pain and penalties.

Nor does the regulation violate the Ex Post Facto Clause. A law violates the Ex Post Facto Clause when it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." U.S. v. Newman, 144 F.3d 531, 537 (7th Cir. 1998) (internal quotations and citations omitted). The provision at issue here does not inflict a greater punishment on plaintiffs for the crimes on which they are incarcerated. Instead, the provision serves to proscribe behaviors prohibited in prison and provides for punishment for such behavior. As such, although punishment for any infractions may in fact serve to increase the actual time plaintiffs are incarcerated, the provision does not offend the Ex Post Facto Clause.

Finally, DOC 303 does not violate plaintiffs' due process rights. The requirements of due process are considerably relaxed in the setting of prison discipline. White v. Indiana Parole Bd., 266 F.3d 759, 766-68 (7th Cir. 2001). And, in the present matter, the provisions of DOC 303 provide for a hearing prior to imposition of any punishment, unless such hearing is waived by a prisoner. Thus, plaintiffs' claims with respect to DOC 303 are dismissed.

27

**F.    Dismissal of Defendants Not Personally Involved**

The following defendants, while named in the caption, are not mentioned in the body of the complaint as being specifically involved in any of plaintiffs' claims: James Doyle, Belinda, Aggie Lautenberg, Doug Reimer, Bob Slachta, Jan Schuck, Nancy Dumbrowski, M. Thorp, Jailer Beasley, Jailer Bauer, Jailer Spurgeon, Jailer Ross, Jailer Lautenberg, and Jailer Feucht.  Therefore, they are dismissed from this action.  See Potter v. Clark, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints."); Roberson v. Alliance Midwest Tubular Prods., No. 99 C 7461, 2004 U.S. Dist. LEXIS 7385, at *6 (N.D. Ill. Apr. 29, 2004) ("It is well established that a plaintiff cannot state a claim against a defendant by merely including the defendant's name in the caption.").

**G.    Conclusion as to Screening of Claims**

Plaintiffs will be permitted to proceed on their access to the courts, First Amendment speech and access to literature, RLUIPA and free exercise, unwanted medical treatment, disciplinary procedures, false information, retaliation, cold cell conditions, nutritional diet, noisy and unsanitary conditions, access to hygiene products, ETS, failure to protect, ADA and equal protection based on lack of alcohol and drug treatment, and equal protection based on favoritism of out-of-state inmates claims. Plaintiffs have failed to state cognizable claims with respect to their "nutri-loaf," constitutionality of Wis. Admin. Cod. § DOC 303, harassment (based on Gahsiyah's ID card and gloves), equal protection based on denial

28

of employment and training claims, as well as their state law claims against defendant
Witch.

## IV. ADDITIONAL MATTERS

By letter of January 31, 2006, plaintiff Krysheski asked me to issue a "court directive"
to deduct the $231.81 remainder of his filing fee from his release account. A review of the
docket in this case reveals that Krysheski paid an initial partial filing fee of $18.15 on August
23, 2005. In addition, he has since paid partial filing fees of $18.15, $17.11, $20.00, and
$1.59. Therefore, I construe Krysheski's filing as a request to have $193.15 withdrawn from
his release account. Upon due consideration, the warden at the correctional institution is
directed to submit to the clerk of court within 21 days of the date of this order $193.15 as
the remainder of plaintiff Krysheski's filing fee. See Doty v. Doyle, 182 F. Supp. 2d 750,
751-52 (E.D. Wis. 2002); see also Spence v. McCaughtry, 46 F. Supp. 2d 861 (E.D. Wis.
1999).

Finally, plaintiff Ghashiyah has filed a "motion to re-issue" the March 8, 2006 order
assessing Ken Jaworski the amount of $37.71 as his initial partial filing fee for this action.
(Doc. #38). Jaworski's payment of $37.71 was due on or before March 29, 2006. However,
a review of the docket in this case reveals that Jaworski has not yet paid the $37.71 filing
fee.

Ghashiyah has not given any reasons why it was necessary for him to contact the
court on behalf of Jaworski. Moreover, Jaworski has already been terminated as a plaintiff
for failing to take the steps necessary to join this action. For these reasons, Ghashiyah's
motion to re-issue the March 8, 2006 order is denied. In addition, Jaworski's motion to

29

proceed in forma pauperis shall be terminated because he is no longer a party to this action.

## V. CONCLUSION

For the foregoing reasons,

**IT IS THEREFORE ORDERED** that defendants James Doyle, Belinda, Aggie Lautenberg, Doug Reimer, Bob Slachta, Jan Schuck, Nancy Dumbrowski, M. Thorp, Jailer Beasley, Jailer Bauer, Jailer Spurgeon, Jailer Ross, Jailer Lautenberg, and Jailer Feucht are dismissed from this action.

**IT IS FURTHER ORDERED** that plaintiffs' "nutri-loaf," constitutionality of Wis. Admin. Cod. § DOC 303, harassment (based on Gahsiyah's ID card and gloves), equal protection based on denial of employment and training claims, and state law claims against defendant Witch, are **DISMISSED**. Plaintiffs' are permitted to proceed on their remaining claims as described above.

**IT IS FURTHER ORDERED** that the warden at the correctional institution where plaintiff Krysheski is incarcerated shall withdraw $193.15 from his release account and forward that sum to the clerk of this court as his payment of the remainder of the filing fee for this action. Such payment is to be made within 21 days of the date of this order.

**IT IS FURTHER ORDERED** that Ghashiyah's motion to re-issue this court's order of March 8, 2006 (Doc. #38) is **DENIED**.

**IT IS FURTHER ORDERED** that Jaworski's motion to proceed in forma pauperis (Doc. #32) is **TERMINATED.**

30

**IT IS FURTHER ORDERED** that a copy of this order be sent to Ken Jaworski, Waupun Correctional Institution, P.O. Box 351, Waupun, Wisconsin, 53963-0351.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon defendants pursuant to Federal Rule of Civil Procedure 4.

**IT IS FURTHER ORDERED** that defendants shall file a responsive pleading to the complaint.

**FINALLY, IT IS ORDERED ORDERED** that copies of this order be sent to the warden of the institution where the inmates are confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiffs are hereby notified that they are required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiffs should also retain a personal copy of each document. If plaintiffs do not have access to a photocopy machine, plaintiffs may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s). Plaintiffs are further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

31

Dated at Milwaukee, Wisconsin, this 11 day of May, 2006.

/s_____
LYNN ADELMAN
District Judge

Case 2:05-cv-00766-LA   Filed 05/11/06   Page 32 of 32   Document 42